GOTHARD, Judge.
This is an appeal of a trial court decision which rendered judgment in favor of plaintiff-appellee, Peter C. Petroutson, and against defendant-appellant, First National Bank of Jefferson Parish, in the amount of $99,889.71, plus legal interest. For the following reasons, we affirm in part, reverse in part, and remand.
Peter Petroutson is a petroleum engineer who managed the oil and gas loan department at First National Bank of Jefferson Parish (FNJ) from 1980 until 1985. FNJ offered Petroutson an employment incentive contract (the agreement) which was executed on September 18,1983. The agreement provided that FNJ would secure a $100,000 purchase price loan to Petroutson which he would use to purchase FNJ stock. The term of the loan was four years, commencing January 1, 1983. The agreement provided that interest would be payable annually and that the principal was due at maturity. FNJ would pay bonus incentives (based on Petr-outson’s performance and profitability) sufficient to at least cover the interest payments on the loan. The agreement stated that if Petroutson left the employ of FNJ, FNJ would have the option to repurchase the shares for $100,000. It also granted the right to Petroutson “at any time during the term of this agreement to require the bank to repurchase the stock” for $100,000.
Petroutson resigned from FNJ on February 15, 1985. FNJ chose not to exercise its option under the agreement to repurchase the stock. On November 21, 1986, Petrout-son made written demand on FNJ to repurchase the stock for $100,000. FNJ refused to repurchase the stock, Petroutson subsequently sold it on the open market for $35,-669.29, and filed suit in the 24th Judicial District Court for the Parish of Jefferson to recover the loss. A one day bench trial on the merits was held on April 13, 1992. At the conclusion of trial, the trial court took the matter under advisement. Pursuant to LSA-C.E. art. 706, the trial court appointed an expert witness post-trial to assist the court. On December 4, 1992, judgment was rendered in favor of Petroutson for $99,-889.71, representing $64,330.71 in stock loss and $35,559.00 in interest payments he made on the loan. FNJ filed this appeal, asserting that the trial judge erred by appointing an expert witness post-trial and adopting all of *1174 the expert’s findings, thereby abdicating his judicial authority; erred in considering extrinsic evidence; erred in not properly interpreting the language of the contract; and erred in not reducing the award because the plaintiff failed to mitigate his damages.
POST-TRIAL EXPERTS
The Louisiana Code of Evidence art. 702 provides that “[i]f scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.” In the matter before us, at the conclusion of the trial, the trial judge notified the parties that he would appoint an expert to assist him, if needed, to understand the evidence and/or determine facts in issue. Pursuant to La. Code Civ.Proc. art. 192(A) the appointment of an expert witness is controlled by LSA-C.E. art. 706 which provides in pertinent part:
•A. Civil cases. In a civil case, the court may on its own motion or on the motion of any party enter an order to show cause why expert witnesses should not be appointed, and may request the parties to submit nominations. The court may appoint any expert witnesses agreed upon by the parties, and may appoint expert witnesses of its own selection. An expert witness shall not be appointed by the court unless he consents to act. A witness so appointed shall be informed of his duties by the court in writing, a copy of which shall be filed with the clerk, or at a conference in which the parties shall have opportunity to participate. A witness so appointed shall advise the parties of his findings, if any; his deposition may be taken by any party; and he may be called to testify by the court or any party.[1]
After trial, the court appointed an expert, who reviewed the record and exhibits, and issued a six page “opinion” to the court.[2] The trial court considered the report of the expert in rendering its judgment of December 4, 1992. As correctly stated by the Louisiana First Circuit Court of Appeal in U.S. Oil of Louisiana, Ltd. v. Louisiana Power & Light Co., 350 So.2d 907, 909, (La. App. 1st Cir.1977),
[t]he proper role of the court-appointed expert ... is to provide the judge with facts and information necessary for a complete and just determination of the issues. It is not the function of that expert to decide or judge the case, or to engage in any of the corollary functions thereof. Moreover, that expert, as any other expert, clearly should be subject to cross examination by the parties. Otherwise, ... the report is objectionable and inadmissible as hearsay. The authority of the trial court ... however broad, does not include the right ex parte to consider evidence obtained without affording the parties the opportunity of cross examination.
In the matter before us, it is clear from the expert’s report that “[h]e weighed the evidence, noted corroboration and contradiction therein, and reached conclusions.” Id. Additionally, in contravention of LSA-C.E. art. 706, neither party was allowed to depose the expert nor able to call him to testify, rendering his report “objectionable and inadmissible as hearsay.” Id. We find that the trial court’s reliance on the expert report in rendering judgment constituted error. Therefore, as in U.S. Oil, we exclude the report of the expert from consideration on review.
INTERPRETATION OF CONTRACTUAL LANGUAGE
In construing the language of a contract, the use of certain rules of interpretation are mandated by the Louisiana Civil Code. LSA-C.C. art. 2045 states: “[interpretation of a contract is the determination of the common intent of the parties.” Both parties stipulated the agreement was clear and unambiguous. LSA-C.C. art. 2046 states that “[w]hen the words of a contract are clear and explicit and lead to no absurd consequences, no further interpretation may be made in search of the parties’ intent.” *1175 Notwithstanding the stipulation of the parties, each maintains a different interpretation of the clause in the agreement which grants Petroutson the right to demand a repurchase of the stock. Petroutson asserts that the agreement was for fopr years and that he had the right under the agreement to demand a repurchase from FNJ up until the date when the four year loan matured. FNJ argues that only the loan term was for four years; Petroutson’s right to demand repurchase was for a term equalling Petroutson’s employ — once he left, his right to demand repurchase expired. Clearly, ambiguity exists.
The agreement specifies that the loan had a term of four years. No term is specified for the agreement, however, and one is required by the inclusion of the sentence: “Peter Petroutson shall have the right at any time during the term of this agreement to require the bank to repurchase the stock at its original price.” If the parties had intended that the agreement would be for a different term than the loan, it should have been stated in the agreement. Therefore, we find that the trial court was correct in finding a four year term of the agreement. Accordingly, we affirm the judgment insofar as it granted $64,380.71 to Petroutson for the stock loss.
The trial court erred, however, in finding that FNJ owed reimbursement of interest paid on the loan after Petroutson left the employ of FNJ, but prior to his demand for repurchase. Petroutson resigned on February 15, 1985, and made his first demand for repayment on November 21, 1986 (within the four year term of the agreement). The agreement provided that FNJ would cover the interest on the loan through bonus incentives. However, FNJ cannot be expected to give bonus incentives (i.e., interest payments) to someone who no longer works for them. FNJ should therefore not have to reimburse Petroutson for interest on the loan after he resigned. Once he made demand for repurchase, however, under the agreement, FNJ had to repurchase the stock for $100,000, at which time Petroutson could have repaid the loan and interest on it would cease to accrue. Because the interest was awarded in a lump sum together with the amount of the stock loss (Petroutson testified he paid $35,559 in interest on the loan from his resignation until he paid the loan off in 1991), we hereby reverse and remand the interest portion of the judgment for a determination of the accrued interest from Petr-outson’s resignation until his demand for repurchase, and reduce the interest portion of the judgment accordingly.
FAILURE TO MITIGATE DAMAGES
FNJ’s final assignment of error lacks merit. FNJ claims the award should be reduced because Petroutson failed to mitigate his damages by selling the stock earlier. Petroutson testified at trial that he held the stock because he had information that the stock price would be turning around. Since the fluctuation in stock prices is inherently speculative, the trial judge was not manifestly erroneous in not reducing the award for failure to mitigate damages.
For the foregoing reasons, we affirm the judgment insofar as it granted $64,330.71 to Petroutson for the stock loss. We reverse the judgment insofar as it awarded to Petr-outson reimbursement of interest payments made subsequent to his resignation but prior to his first written demand, and remand that portion of the judgment for a determination and reduction of that amount. In all other respects, the judgment is affirmed.
AFFIRMED IN PART, REVERSED IN PART AND REMANDED.
GRISBAUM, J., dissents with written reasons.

. See also La.Code Civ.Proc. art. 373.

. Both parties were also issued a copy of the expert’s opinion.